IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BALDOR ELECTRIC COMPANY                                           PLAINTIFF

        v.                          2:06-CV-02135

SUNGARD RECOVERY SERVICES LP,
SUNGARD RECOVERY SERVICES, INC.                                  DEFENDANTS


## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Motion to Dismiss the Amended Complaint of Plaintiff or, in the Alternative, to Strike Jury Demand (Doc. 29) filed in this case on September 25, 2006, by Defendants, is GRANTED IN PART and DENIED IN PART, and Plaintiff's Amended Complaint (Doc. 22) filed in this case on September 6, 2006, is DISMISSED IN PART WITH PREJUDICE.

### I.  BACKGROUND

This case arises under the terms of the Recovery Services Agreement [hereinafter "Agreement"] entered into by the parties on or about April 1, 1998.  The terms of the Agreement provide that, in the event of disaster or unplanned condition that rendered Plaintiff unable to use a location for its intended computer processing and related purposes, Defendants were to provide certain equipment and data recovery services that would allow Plaintiff to continue its computer operations without a debilitating break in services.  In exchange for the services provided by Defendants, Plaintiff agreed to pay a monthly fee for the duration of the Agreement.

On or about December 12, 2002, Plaintiff sought to terminate the Agreement as of April 1, 2003. The Defendants advised Plaintiff that the Agreement would not be terminated until May 6, 2006, and that Plaintiff was obligated to continue to make monthly payments through that date. Plaintiff did not make any monthly payments after April 1, 2003.

The original agreed term of the Agreement, as set out in Schedule A of the Agreement, was sixty (60) months from April 1, 1998, the date of commencement. Schedule A was subsequently superseded and replaced on several occasions by agreement of the parties. In each instance, the parties referred to the superceding schedule as Schedule B. The following is a summary of the Schedules:

| Schedule | Term | Commencement Date |
|----------|------|-------------------|
| A | 60 Months | 04/01/1998 |
| B$^1$ | 60 Months | 01/01/1999 |
| B$^2$ | 60 Months | 06/01/2000 |
| B$^3$ | 60 Months | 05/07/2001 |
| B$^4$ | Coterminous with B$^2$ | 04/15/2002 |

In its First Amended Complaint, Plaintiff seeks a declaration that, under the terms of the Agreement at issue, it has fulfilled each and every one of its obligations under the

2

Agreement, including the payment of all sums due under the Agreement, and that the Agreement terminated on April 1, 2003. Doc. 22, at ¶ 22.  In the alternative, Plaintiff seeks recission of the Agreement based on Plaintiff's claims that: (1) the provisions of the Agreement and Schedules thereto regarding the agreed term are ambiguous, and the intent of the parties was that the agreed term of the Agreement, as supplemented by the Schedules, was a total of sixty (60) months in duration; (2) that Plaintiff was unilaterally mistaken as to the term of the Agreement and reasonably believed that the Agreement was to end on April 1, 2003; (3) that Defendants knew or had reason to know of Plaintiff's mistake; and (4) to enforce the Agreement as argued by Defendants would be unfair, oppressive, and unconscionable, because Plaintiff did not reasonably expect the Agreement to remain in force through May 6, 2006, as the Defendants contend, and it should not be required to make payments to Defendants for their services through this date as Plaintiff contracted with a different entity to provide these services beginning on April 2, 2003.[1]  Doc. 22, at ¶¶ 22-28.

---

[1] The Court notes that in Footnote 4 of Plaintiff's Response in Opposition to Defendants' Motion to Dismiss, Plaintiff requests leave of this Court to amend its first Amended Complaint to set forth a separate count directed to Plaintiff's reformation claim.  However, the Court will not address this request as it was not properly filed as a separate motion and further did not properly contain a proposed version of Plaintiff's second Amended Complaint as required by the Court.

AO72A
(Rev. 8/82)

## II.   STANDARD ON MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a claim if it is not one "upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss a complaint under 12(b)(6), the Court must assume all the facts alleged in the Complaint are true, and must liberally construe the Complaint in the light most favorable to the Plaintiff. *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 555 (8th Cir. 2006); *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001); *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999).  A 12(b)(6) motion to dismiss a complaint should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Young*, 244 F.3d at 627. Thus, as a practical matter, a dismissal under 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. *Schmedding*, 187 F.3d at 864.  Nevertheless, "dismissal under 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Stringer v. St. James R-1 School District*, 446 F.3d 799, 802 (8th Cir. 2006)

4

(quoting *Young*, 244 F.3d at 627); *see also Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

To avoid dismissal, a complaint must provide allegations sufficient to state a claim as a matter of law and not merely provide legal conclusions. *Young*, 244 F.3d at 627. Certain documents may properly be considered in determining a motion to dismiss. In cases involving a contract, such as the instant case, contract documents attached as exhibits to the Complaint are properly considered when ruling on a motion to dismiss under Rule 12(b)(6). *Stahl v. United States Dep't of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003) (citing *K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 889 (8th Cir. 2002); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002)). Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206-07 (5th Cir. 1975); *see also Woody v. Dirani*, 2006 WL 2523458, at *2 (W.D.Ark. Aug. 30, 2006).

With this legal framework in mind, the Court turns to the record of this case.

### III.  DISCUSSION

### A.  Count I

The Court finds that Plaintiff's request for declaratory

5

judgment in Count I of its Amended Complaint that the Agreement
terminated on April 1, 2003, contradicts the unambiguous,
express language of the Agreement and Schedules.  Similarly,
Plaintiff's alternative contention in Count I of its Amended
Complaint that it was the intent of the parties that the
Agreement terminate on April 1, 2003, contradicts the
unambiguous, express language of the Agreement and Schedules.
Therefore, Defendant's Motion to Dismiss Count I of Plaintiff's
Amended Complaint is GRANTED and Count I of Plaintiff's Amended
Complaint is DISMISSED WITH PREJUDICE.

### 1.  Choice of Law

Generally, a federal court sitting in Arkansas must apply
the substantive law of Arkansas in a diversity case.  *Heating
and Air Specialists, Inc. v. Jones*, 180 F.3d 923, 928 (8th Cir.
1999); *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).  This
application of a state's substantive law by a federal court also
includes the forum's choice of law rules.  *Aetna Life Insurance
Co. v. Great Nat'l Corp.*, 818 F.2d 19, 20 (8th Cir. 1987);
*Klaxon v. Stenton Mfg. Co.*, 313 U.S. 387 (1941).

Under Arkansas choice of law rules, a foreign state's
substantive law is to be applied if the parties so intend and if
there is a substantial connection between the foreign state and
the contract.  *Heating & Air Specialists, Inc. v. Jones*, 180
F.3d 923, 928-29 (8th Cir. 1999); *Aetna Life Insurance Co.*, 818

6

F.2d at 20; *Bice Construction Co. v. CIT Corp.*, 700 F.2d 465, 466 (8th Cir. 1983) ("Under *Cherokee Village*, where the parties stipulate in a multistate contract that a particular state's law will govern the validity of a contract, that state law will be held to apply. . . ."); *U.S. Manganese Corp. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 576 F.2d 153, 156-58 (8th Cir. 1978).

Section D.10 of the Agreement provides that the Agreement at issue is to be "GOVERNED BY SUBSTANTIVE PENNSYLVANIA LAW." Doc. 22, Exhibit "A," at ¶ D.10.  The language used by the parties in the Agreement, when read according to its plain meaning clearly provides that Pennsylvania substantive law should apply when construing the Agreement.  Accordingly, Pennsylvania law will be applied to the issues in this case involving the parties' rights and duties under the Agreement since the Court finds it clear that the parties intended for substantive Pennsylvania law to govern the Agreement and the State of Pennsylvania has a substantial connection to the Agreement in that the Defendants were organized and exist under the laws of the State of Pennsylvania and each Defendant has its principal place of business in the State of Pennsylvania.

## 2.  Contract Interpretation and Ambiguity Under Pennsylvania Law

The Third Circuit opinion in *Bohler-Uddeholm Am., Inc. V.*

*Ellwood Group, Inc.*, 247 F.3d 79, 92 (3d Cir. 2001) sets forth a detailed analysis of contract interpretation and ambiguity under Pennsylvania law. "Pennsylvania contract law begins with the 'firmly settled' point that 'the intent of the parties to a written contract is contained in the writing itself.'" *Id.* (quoting *Krizovensky v. Krizovensky*, 425 Pa.Super. 624 A.2d 638, 642 (Pa.Super.Ct. 1993)). If the terms of a written contract are clear and unambiguous, construction of the contract is a question of law for the court. *Id.* at 92-93. If the contract is unambiguous, "parol evidence of prior inconsistent terms or negotiations is inadmissible to demonstrate intent of the parties." *Beta Spawn, Inc. v. FFE Transp. Servs., Inc.*, 250 F.3d 217, 227 (3d Cir. 2001) (citing *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148 (3d Cir. 1994)).

"Where a contract provision is ambiguous, however, extrinsic evidence may be properly admitted in an attempt to resolve the ambiguity." *Id.* (citing *In re Herr's Estate*, 161 A.2d 32, 34 (Pa. 1982)). "Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999); *see also Bohler-Uddeholm*, 247 F.3d at 93 ("Where language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as manifestly expressed,

8

rather than as, perhaps, silently intended.  Clear contractual
terms that are capable of one reasonable interpretation must be
given effect without reference to matters outside the
contract.")  "We will not . . . distort the meaning of the
language or resort to a strained contrivance in order to find an
ambiguity."  *Madison Const. Co.*, 753 A.2d at 106; *see also*
*Bohler-Uddeholm*, 247 F.3d at 93 (quoting *Steuart v. McChesney*,
444 A.2d 659, 663 (Pa. 1982) ("'[I]n holding that an ambiguity
is present in an agreement, a court must not rely upon a
strained contrivancy to establish one; scarcely an agreement
could be conceived that might not be unreasonably contrived into
the appearance of ambiguity.'")).

Pennsylvania law also provides that to determine whether
ambiguity exists in a contract, "the court may consider 'the
words of the contract, the alternative meaning suggested by
counsel, and the nature of the objective evidence to be offered
in support of that meaning.'" *Bohler-Uddeholm*, 247 F.3d at 93
(quoting *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d
1001, 1011 (3d Cir. 1980)).  Thus, Pennsylvania law appears to
create an inherent tension between two principles:

> (1) a contract is not ambiguous, and thus must be
> interpreted on its face without reference to extrinsic
> evidence, 'if the court can determine its meaning
> without any guide other than a knowledge of the simple
> facts on which, from the nature of the language in
> general, its meaning depends;' and (2) contractual
> terms that are clear on their face can be latently
> ambiguous, and 'Pennsylvania law permits courts to

AO72A
(Rev. 8/82)

> examine certain forms of extrinsic evidence in
> determining whether a contract is ambiguous.' Thus,
> when a court is faced with a contract containing
> facially unambiguous language, it seems that
> Pennsylvania law both requires that the court
> interpret the language without using extrinsic
> evidence, *and* allows the court to bring in extrinsic
> evidence to prove latent ambiguity.

*Bohler-Uddeholm*, 247 F.3d at 93-94 (citations omitted)

(emphasis in original).

The Third Circuit addressed this inherent tension in *Mellon Bank, N.A.*, 619 F.2d at 1001. The Third Circuit indicated that courts may examine only certain kinds of extrinsic evidence to establish latent ambiguity in a contract. *See Bohler-Uddeholm*, 247 F.3d at 94 (citing *Mellon Bank, N.A.*, 619 F.2d at 1011-14). The key inquiry is whether "the proffered extrinsic evidence is about the parties' objectively manifested 'linguistic reference' regarding the terms of the contract, or is instead merely about their expectations. The former is the right type of extrinsic evidence for establishing latent ambiguity under Pennsylvania law, while the latter is not." *Id.* (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir. 1995)). "Put another way, a party offers the right type of extrinsic evidence for establishing latent ambiguity if the evidence can be used to support 'a reasonable alternative semantic reference' for specific terms contained in the contract." *Id.* (quoting *Mellon Bank, N.A.*, 619 F.2d at 1012 n.13). A court "must be

10

careful not to cross the 'point at which interpretation becomes alteration of the written contract.'" *Id.* (quoting *Mellon Bank, N.A.*, 619 F.2d at 1011).   The Third Circuit summarized Pennsylvania law on this point, stating:

> (1) mere disagreement between the parties over the meaning of a term is insufficient to establish that term as ambiguous; (2) each party's proffered interpretation must be reasonable, in that there must be evidence in the contract to support the interpretation beyond the party's mere claim of ambiguity; and (3) the proffered interpretation cannot contradict the common understanding of the disputed term or phrase when there is another term that the parties could easily have used to convey this contradictory meaning.

*Id.* at 94-95.

### 3.  Plaintiff's Request for Declaratory Judgment Is Dismissed

The Court finds that Plaintiff's request for declaratory judgment in Count I of its Amended Complaint that the Agreement terminated on April 1, 2003, contradicts the unambiguous, express language of the Agreement and Schedules.   Similarly, Plaintiff's alternative contention in Count I of its Amended Complaint that it was the intent of the parties that the Agreement terminate on April 1, 2003, contradicts the unambiguous, express language of the Agreement and Schedules. Therefore, Defendant's Motion to Dismiss Count I of Plaintiff's Amended Complaint is GRANTED and Count I of Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE.

Effective on April 1, 1998, Plaintiff and Defendants

11

entered into the Agreement, pursuant to which Defendants agreed to provide backup capabilities and other services for Plaintiff. Plaintiff does not question the authenticity of the Agreement nor any of the subsequent Schedules at issue in the instant case.  Here, the pleadings disclose on their face facts that would defeat Plaintiff's claims.

Plaintiff's contention in Count I that the Agreement unambiguously states that the Agreement was to terminate on April 1, 2003, is contradicted and controlled by the Agreement which, to the contrary, unambiguously and plainly states that the Agreement was to terminate on May 6, 2006.  As established in Part II *supra*, where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control.

Plaintiff's general averment in Count I that, in the alternative, the Agreement is ambiguous regarding the agreed term but the intent of the parties was that the agreed term was sixty (60) months, is also contradicted and controlled by the Agreement which unambiguously provides that the Agreement terminated on May 6, 2006.

Plaintiff states that, prior to entering into each and every additional Schedule to the Agreement, representatives of Defendants confirmed that the term of the Agreement was not changed or impacted in any way by the additional Schedules and

12

that the term of the Agreement expired on April 1, 2003. The question before the Court is whether Plaintiff's claim that the disputed "Agreed Term" is latently ambiguous meets the standard explained in *Bohler-Uddeholm*, 247 F.3d at 92-96. The Court finds that Plaintiff's claim does not meet that standard.

As discussed in Part III.A.2 *supra*, under Pennsylvania law, mere disagreement between the parties over the meaning of a term is insufficient to establish that term as ambiguous. *Bohler-Uddeholm*, 247 F.3d at 94. There must be evidence in the Agreement to support Plaintiff's interpretation beyond Plaintiff's mere claim of ambiguity. *Id.* The Court finds that there is no evidence in the Agreement to support Plaintiff's interpretation beyond Plaintiff's mere claim of ambiguity. Further, Plaintiff's proffered interpretation cannot contradict the common understanding of the disputed term or phrase when there is another term that the parties could easily have used to convey this contradictory meaning. *Id.* at 94-95. As discussed below, the Court finds that Plaintiff's proffered interpretation contradicts the common understanding of the disputed term when the parties could have used another term in the Agreement such as that contained in Schedule B[4], providing each such Schedule was "[c]oterminous with [p]revious [s]chedule," and could easily have been used to convey Plaintiff's contradictory meaning.

The Court agrees with the Defendants that the provisions

13

governing the term of the Agreement and Schedules unambiguously provide that the Agreement was to terminate on May 6, 2006. Section D.1 of the Agreement states (emphasis added):

> CONTRACT TERM.  This Agreement shall continue in effect for so long as there is a Schedule in effect. The term of a Schedule, and Subscriber's rights to use the Recovery Services selected on that Schedule, *shall begin on the Commencement Date and continue in effect for the Agreed Term stated in that schedule.* Thereafter, that Schedule shall automatically renew for successive renewal terms of equal duration to the Agreed Term, unless either party gives written notice of termination to the other at least six months before the end of the then current term.  Subscriber acknowledges that SunGard requires this advance notice due to the substantial, long-term equipment and facilities commitments SunGard makes in reliance upon its subscriber contracts. This Agreement and each Schedule is a non-cancelable contract that may be terminated only in accordance with its express terms.

The Court finds that the plain language of the Agreement unambiguously and expressly provides that the term and Commencement Date on the Schedule then in effect determines the term of the Agreement.

Plaintiff does not dispute that the plain language of each Schedule states a specific "Commencement Date" as follows: April 1, 1998, for Schedule A; January 1, 1999, for Schedule B[1]; June 1, 2000, for Schedule B[2]; May 7, 2001, for Schedule B[3]; and April 15, 2002, for Schedule B[4].  However, The only Schedule attached to Plaintiff's Amended Complaint that expressly provides that it was "[c]oterminous with [p]revious [s]chedule," is Schedule B[4].

14

Further, Plaintiff does not dispute that the plain language of Schedule A, Schedule B$^1$, Schedule B$^2$, and Schedule B$^3$, each state an "Agreed Term" of sixty (60) months.  Nor does Plaintiff dispute that the only additional Schedule attached to Plaintiff's Amended Complaint is Schedule B$^4$, and it is the only Schedule that expressly provides that it was "[c]oterminous with [p]revious [s]chedule."

Plaintiff argues that the agreed term of sixty (60) months stated in Schedule B$^1$, Schedule B$^2$, and Schedule B$^3$, is the same original agreed term of sixty (60) months stated in Schedule A that is merely repeated in each subsequent Schedule.  The Court disagrees.

The plain language of the Schedules attached to Plaintiff's Amended Complaint contradicts Plaintiff's assertion.  The unambiguous, plain language of Schedule B$^1$, B$^2$, and B$^3$, clearly state that they "***supersede[] and replace[]*** the previous Schedule[s]...."  (Emphasis added.)  There is nothing in those Schedules that expressly states, or even implies, that the agreement term in each subsequent Schedule is the same as the original sixty (60) month term specified in Schedule A.  To the contrary, each subsequent Schedule clearly and unambiguously states that it "replaces and supersedes" the previous schedule.

The language included in Schedule B$^4$ underscores this conclusion.  Although the unambiguous, plain language of B$^4$,

15

specifying a commencement date of April 15, 2002, clearly states that "[t]his Schedule replaces and supersedes the previous Schedule B having a Commencement Date of 05/07/2001," it is the only Schedule that also unambiguously and plainly states that it is "[c]oterminous with [p]revious Schedule." Clearly, if these parties intended for Schedule B[1], Schedule B[2], and Schedule B[3], to have the same original agreed term of sixty (60) months as stated within Schedule A, language to that effect would have been included in each of the subsequent Schedules.

Therefore, for the reasons stated above, the Court finds that the term set forth in Schedule B[3] was the operative term of the Agreement. The unambiguous, plain language of that Schedule provided a commencement date of May 7, 2001, and an agreed term of sixty (60) months. Thus, the Court finds that under the terms of Section D.1 of the Agreement, the Agreement terminated on May 6, 2006, i.e. sixty (60) months from May 7, 2001.

Therefore, for the reasons stated above, Defendant's Motion to Dismiss Count I of Plaintiff's Amended Complaint is GRANTED and Count I of Plaintiff's Amended Complaint is DISMISSED.

## B.  Count II

Count II contains Plaintiff's claim for rescission based on inducement by mistake, and in light of the factual allegations in Paragraph 10 of Plaintiff's Amended Complaint, Count II is further considered to contain Plaintiff's claim for rescission

16

based on inducement by misrepresentation.

For the reasons set forth below, to the extent Plaintiff's contention in Count II of its Amended Complaint is that an ambiguity exists in the Agreement causing Plaintiff to be mistaken as to the agreed term of the Agreement,  and thus Plaintiff should be allowed to rescind the Agreement, Defendants' Motion to Dismiss Count II of Plaintiff's Amended Complaint is GRANTED and Count II of Plaintiff's Amended Complaint is DISMISSED.  However, for the reasons set forth below, to the extent Plaintiff's contention in Count II of its Amended Complaint is that it was mistaken as to the agreed term of the Agreement because of alleged misrepresentations by the Defendants or their agents, and thus should be allowed to rescind the Agreement, Defendants' Motion to Dismiss Count II of Plaintiff's Amended Complaint is DENIED.

## 1.  Choice of Law

Again, the Court first considers the parties' choice of law provision in the Agreement, which states, "This Agreement Shall be Governed by Substantive Pennsylvania Law." Clearly, Plaintiff and Defendants have agreed that Pennsylvania state law will control those issues involving their rights and duties under the Agreement itself.  Beyond this, the Court does not believe this narrowly drawn sentence encompasses the remedy of rescission or the claims for which this remedy is sought in Count II of

17

Plaintiff's Complaint.

The wording of the choice of law provision presupposes the existence of a valid Agreement and thus encompasses only the interpretation and construction of the Agreement itself. This provision cannot be construed to read that Pennsylvania law governs any tortious conduct of the parties or any other dimension of their relationship. The choice of law clause in the Agreement does not reference the issue of contract validity. The Agreement is silent with respect to any claims arising out of the events leading to contract formation or the parties' negotiations.

If these parties had desired Pennsylvania law to apply to issues of validity and had wanted a more expansive choice of law provision, they could easily have drafted one to this effect. For example, Plaintiff and Defendants could have inserted language that Pennsylvania law governed "all matters, including, but not limited to, matters of *validity*, construction, effect or performance." *See Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F.Supp.2d 589, 593 (E.D.Pa. 1999) (quoting *Composiflex, Inc. v. Advanced Cardiovascular Sys., Inc.*, 795 F.Supp. 151, 157 (W.D.Pa. 1992) (emphasis added); *Hitachi Credit Amer. Corp. v. Signet Bank*, 166 F.3d 614, 624, 628 (4th Cir. 1999)). However, the parties did not, and the Court will not rewrite the contract.

18

Rescission is a remedy in equity to void a contract *ab initio* and to return the parties to their positions prior to the execution of the agreement or to do so to the extent possible. Unlike a claim of breach of contract seeking money damages, rescission comes into play only when a party is attacking the validity of the agreement, that is, challenging whether there was ever a meeting of the minds. Claims for rescission based on inducement by mistake and rescission based on inducement by misrepresentation emanate from events that occurred before the Agreement or Schedules even came into being and are separate and distinct from any breach of contract claim, which presupposes the existence of a valid Agreement. Thus, the Court finds that Plaintiff's claims for rescission based on inducement by mistake and inducement by misrepresentation are not subject to the parties' contractual choice of law provision in the Agreement.

Generally, absent such a choice of law provision, this Court must employ the analysis under Arkansas choice of law rules to determine whether Arkansas or Pennsylvania law should be applied in order for this Court to determine whether Plaintiff has failed to state a claim for rescission as a matter of law and thus should be dismissed. However, there is an exception to this rule. If the laws of both states are of such similarity that, under the laws of both states, the Court finds that Plaintiff has or has not successfully stated a claim, then

19

the Court need not determine which states' laws apply.   *See*

*Cotton v. Commodore Exp., Inc.*, 459 F.3d 862, 864 (8th Cir.

2006) (citing *Leonards v. S. Farm Bureau Cas. Ins. Co.*, 279 F.3d

611, 612 (8th Cir. 2002) (finding it unnecessary to resolve a

choice of law conflict when the relevant legal principles were

the same in both states at issue)).

As established below, the Court finds there is no choice of

law conflict to be resolved pertaining to Count II of

Plaintiff's Amended Complaint since the legal principles for the

rescission of a contract are the same under the state laws of

both Arkansas and Pennsylvania.

### a.   Rescission Under Arkansas Law

### i.   Substantive Law

Under Arkansas law, rescission is an equitable remedy

rather than a cause of action or a claim for relief.   Under

Arkansas law, rescission is described as:

> a remedy by which the parties abandon and recede from
> a contract they now recognize they did not intend to
> make or that the court now recognizes should not have
> been made.
>                         . . .
>
> Contracts may be rescinded for mistake, undue
> influence or imposition, fraud, constructive fraud,
> economic duress, a violation of law or public policy,
> entire or substantial failure of consideration, or
> substantial nonperformance.

*See* Howard W. Brill, Ark. Law of Damages § 31-3 (5th ed.).   As

stated by the Arkansas Supreme Court, "[i]t is generally

20

recognized that in an action for rescission of a contract in a court of equity, the court applies equitable principles in an attempt to restore the status quo or place of the parties in their respective positions at the time of the [agreement]." *Cardiac Thoracic and Vascular Surgery, P.A. Profit Sharing Trust v. Bond*, 840 S.W.2d 188, 193 (Ark. 1992) (citing *Bates v. Simmons*, 536 S.W.2d 292, 295 (Ark. 1976)).

Under Arkansas law, courts may grant equitable relief, in the form of rescission based on a unilateral mistake, where the unilateral mistake is induced by the other party. *See Lowell Perkins Agency, Inc. v. Jacobs*, 469 S.W.2d 89 (Ark. 1971); *James v. Centex Const. Co.*, 255 F.Supp. 508, 511 (E.D.Ark. 1966); *see also* the Eighth Circuit unpublished decision in *Becton, Dickinson and Co. v. Accu-Path Medical Laboratory, Inc.*, 17 Fed.Appx. 500, 501; 2001 WL 969010 (8th Cir. (Ark.) 2001).

As a general rule, restoring the parties to their pre-contract positions, i.e. status quo, is a prerequisite to rescission of a contract. *See generally Fisher v. Jones*, 816 S.W.2d 865, 869 (Ark. 1991). However, "[a]bsolute and literal restoration is not required, but only such restoration as is reasonably possible in accordance with equitable principles." *Id.* at 869-70 (citing *Stanford v. Smith*, 260 S.W. 435 (Ark. 1924)). In cases where property or services have been so changed or lost that it cannot be restored in specie, but where

21

its value is capable of being ascertained, a party entitled to do so may rescind the contract by tendering the pecuniary equivalent of the property in question. *See id.*; *see also* the unpublished Arkansas Court of Appeals decision in *Erickson Supply & Const. Co., Inc. v. Boyles*, 1989 WL 105955, *1, at *2 (Ark.App. Sept. 13, 1989) (citing 17 Am.Jur.2d § 514 (1964)).

### ii. Procedural Law

Under Arkansas law, a party that seeks rescission of a contract must announce his intent to seek rescission of the contract at once and act with reasonable diligence so that the parties may be restored to their original position as nearly as possible. *Douglas v. Nationwide Mutual Ins. Co.*, 913 S.W.2d 277, 282 (Ark. 1996) (citing *Herrick v. Robinson*, 595 S.W.2d 637 (Ark. 1980) *reh'g denied* 595 S.W.2d 647 (1980)). Whether a party has unreasonably delayed in seeking the rescission of a contract following the discovery of circumstances warranting rescission is a question of fact. *Herrick*, 595 S.W.2d at 644 ("Since rescission requires prompt action after the discovery of the fraud, the question of timeliness of the attempted rescission was one of fact."); *Cross v. Rial*, 305 S.W.2d 129, 132 (Ark. 1957) ("the determination of whether the buyer has made an election to rescind within a reasonable time depends on testimony. In other words it presents a question of fact for a [trier of fact].").

22

### b. Rescission Under Pennsylvania Law

### i. Substantive Law

Similar to Arkansas law, rescission under Pennsylvania law is an equitable remedy rather than a cause of action or a claim for relief. Under Pennsylvania law, rescission is described as:

> the unmaking of a contract, and is not merely a termination of the rights and obligations of the parties towards each other, but is an abrogation of all rights and responsibilities of the parties towards each other from the inception of the contract. The purpose of an equitable rescission is to return the parties as nearly as possible to their original positions with regard to the subject matter of the contract. One who wishes to rescind a contract must restore or tender a return of the property or security which was the subject matter of the contract.

*Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F.Supp.2d 589, 595-96 (E.D.Pa. 1999) (quoting *Keenheel v. Securities Comm'n*, 579 A.2d 1358, 1361 (Pa.Cmwlth. 1990)). The Delaware Supreme Court similarly explains:

> [e]ssentially, the equitable remedy of rescission results in abrogation or "unmaking" of an agreement, and attempts to return the parties to the *status quo*. Common grounds for rescission of a contract [ ] include fraud, misrepresentation and mistake. But in addition to rescission for fraudulent misrepresentation, rescission also may be granted under certain circumstances for innocent misrepresentations made by a seller.

*Id.* at 596 (quoting *Norton v. Poplos*, 443 A.2d 1, 4 (Del. 1982) (citations omitted)).

Both parties cite the unpublished opinion by the United States District Court for the Eastern District of Pennsylvania

23

in *Eagle Traffic Control, Inc. v. United Rentals, Inc.*, 2004 WL
228686 (E.D.Pa. Feb. 4, 2004), as authority that courts may
grant equitable relief, in the form of rescission based on a
unilateral mistake, "when the non-mistaken party 'knows or has
reason to know of the unilateral mistake, and if the mistake, as
well as the actual intent of the parties is clearly shown,
relief will be granted. . . .'" *Id.* at *4 (quoting *In re
Allegheny Intern., Inc.*, 954 F.2d 167, 180 (3d Cir. 1992)
(quoting *Lanci v. Metropolitan Ins. Co.*, 564 A.2d 972, 974
(Pa.Super. 1989))).

Generally under Pennsylvania law, which is similar to
Arkansas law, restoring the parties to their pre-contract
positions, i.e. status quo, is a prerequisite to rescission of
a contract. *See generally Harold v. McGann*, 406 F.Supp.2d 562,
575 (E.D.Pa. 2005). However, the general rule is not to be
strictly construed where restoration is impossible, and is to be
applied in accordance with equitable principles. *See Eagle
Traffic Control, Inc.*, 2004 WL 228686, at *5. "Pennsylvania
courts have explained that the parties need not be placed in
*exactly* the same position, but rather must be returned 'as
nearly as possible to their original positions with regard to
the subject matter of the contract.'" *Id.* (quoting *Keenheel v.
Com., Pennsylvania Securities Comm'n*, 579 A.2d 1358, 1361
(Pa.Commw.Ct. 1990)) (emphasis in original).

24

### ii.  Procedural Law

Under Pennsylvania law, which is similar to Arkansas law, a party has a duty to act promptly and notify the other party without delay or within a reasonable time of its intent to rescind a contract after it discovers facts warranting rescission.  *Fichera v. Gording*, 227 A.2d 642, 643-44 (Pa. 1967).  "What is a reasonable time within which to give such notice depends upon the circumstances of each case and is a question of law for the [trier of fact]."  *Frantz Equip. Co. v. Leo Butler Co.*, 88 A.2d 702, 707 (Pa. 1952).

### c.  There is No Choice of Law Conflict to be Resolved as the Legal Principles for the Rescission of a Contract are the Same Under the State Laws of Both Arkansas and Pennsylvania

As established in Parts III.B.1.a and b *supra*, the legal principles for the rescission of a contract are essentially the same under the state laws of both Arkansas and Pennsylvania. Therefore, the Court finds there is no choice of law conflict to be resolved pertaining to Count II of Plaintiff's Amended Complaint.

AO72A
(Rev. 8/82)

**2.  Defendant's Motion to Dismiss Plaintiff's Request for
Recission is Granted in Part and Denied in Part**

**a.  Plaintiff's Claim in Count II of its Amended Complaint
that the Term of the Agreement Was Ambiguous and
Plaintiff Was Mistaken As to the Agreed Term and
Thus Should be Allowed to Rescind the Agreement
is Dismissed with Prejudice and Defendants'
Motion to Dismiss this Part of Count II of
Plaintiff's Amended Complaint is Granted**

Defendants' Motion to Dismiss Plaintiff's claim in Count II
of its Amended Complaint that the term of the Agreement was
ambiguous and Plaintiff was mistaken as to the agreed term and
thus should be allowed to rescind the Agreement is GRANTED, and
that part of Plaintiff's Amended Complaint is DISMISSED WITH
PREJUDICE.

The Court finds that, to the extent Plaintiff claims an
ambiguity exists in the Agreement causing Plaintiff to be
mistaken as to the term of the Agreement, such assertion
contradicts the unambiguous, express language of the Agreement
and Schedules.  As discussed in Section III.A.3 *supra*, the Court
finds that there is no ambiguity as to the agreed term specified
in the clear, plain language of the Agreement and Schedules at
issue in the instant case.

The Plaintiff's general averment in Count II of its Amended
Complaint that the agreed term of the Agreement was ambiguous,

26

and Plaintiff was mistaken because of that ambiguity when it entered into the Agreement with the Defendants, is contradicted and controlled by the Agreement showing that the Agreement terminated on May 6, 2006.  As established in Part II *supra*, where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control.

It is clear to the Court that if there were a unilateral mistake at all based on any perceived ambiguity by the Plaintiff as to the term of the Agreement, it arose from the Plaintiff's laxity in assessing and confirming the agreed term prior to entering into the Agreement and subsequent Schedules.  The Court cannot rescind valid contracts because one party subsequently discovers that it failed to appraise itself of certain available facts which would have affected its decision to enter into the Agreement.  It is the Court's opinion that unilateral mistakes, which arise through no fault of the other party, but simply through the mistaken party's own negligence or want of due care, afford no basis of relief by rescission.

To the extent Plaintiff's contention in Count II of its Amended Complaint is that an ambiguity exists in the Agreement causing Plaintiff to be mistaken as to the agreed term of the Agreement, Defendant's Motion to Dismiss Count II of Plaintiff's Amended Complaint is GRANTED and Count II of Plaintiff's Amended

27

Complaint is DISMISSED WITH PREJUDICE.

**b.  Defendant's Motion to Dismiss Plaintiff's Claim for Rescission Based on Alleged Misrepresentations by the Defendants or Their Agents is Denied**

To the extent Plaintiff claims in Count II of its Amended Complaint that it was mistaken as to the agreed term of the Agreement because of alleged misrepresentations by the Defendants or their agents, Defendant's Motion to Dismiss Count II of Plaintiff's Amended Complaint is DENIED.

Plaintiff alleges in its Amended Complaint that prior to entering into each additional Schedule to the Agreement, representatives of Defendants confirmed that the term of the Agreement was not changed or impacted in any way by the additional Schedules and that the term of the Agreement expired on April 1, 2003.  If taken as true, these allegations could possibly invalidate the Agreement or subsequent Schedules at issue.

In considering Plaintiff's allegations in the light most favorable to Plaintiff, the Court cannot determine at this point in the proceedings that Plaintiff can prove no set of facts which would entitle it to the relief of rescission.  The Court finds that Defendants have not clearly established that no material issue of fact remains as to whether or not agents of the Defendants gave any such assurances to Plaintiff; thus,

28

Plaintiff's allegations are a question of fact which should be determined by a trier of fact and not this Court ruling on whether or not Plaintiff has stated a claim as a matter of law under Federal Rule of Civil Procedure 12(b)(6).  *Elnashar v. U.S. Dep't of Justice*, 446 F.3d 792, 794 (8th Cir. 2006).

To the extent Plaintiff claims in Count II of its Amended Complaint that it was mistaken as to the agreed term of the Agreement because of alleged misrepresentations by the Defendants or their agents, Defendant's Motion to Dismiss Count II of Plaintiff's Amended Complaint is DENIED.

### c.   Whether Plaintiff Failed to Act Promptly and Seek Rescission Within a Reasonable Time is a Question of Fact Not Properly Considered on a Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) When the Facts are in Dispute and Thus Defendants' Motion to Dismiss on This Basis is Denied

Whether Plaintiff failed to act promptly and seek rescission within a reasonable time is a question of fact not properly considered on a Motion to Dismiss under Rule 12(b)(6) when the facts are in dispute.  Thus, Defendants' Motion to Dismiss on this basis is DENIED.

In their Motion to Dismiss, Defendants contend Plaintiff failed to seek rescission of the Agreement promptly or within a reasonable period of time after Plaintiff learned of its

29

unilateral mistake as to the term of the Agreement.  The Court acknowledges that if the facts were not in dispute, as was the situation in the case of *Fichera v. Gording*, 227 A.2d 642, 643-44 (Pa. 1967), cited by Defendants, the Court would be in a position to decide on the pleadings whether Plaintiff failed to seek rescission of the Agreement promptly or within a reasonable time after Plaintiff learned of the grounds which might give rise to rescission of Agreement as Defendants suggest.  However, under both Arkansas and Pennsylvania law, when the facts are in dispute as to whether a party acted promptly and within a reasonable time is a question of fact that depends upon the facts and circumstances of each case.  *Herrick*, 595 S.W.2d at 644; *Cross*, 305 S.W.2d at 132; *Frantz Equip. Co.;* 88 A.2d at 707.

In considering Plaintiff's allegations in the light most favorable to Plaintiff, the Court cannot determine at this point that Plaintiff can prove no set of facts which would entitle it to the relief of rescission.  The Court finds that Defendants have not clearly established that Plaintiff failed to seek rescission of the Agreement promptly or within a reasonable period of time after Plaintiff learned of its unilateral mistake as to the term of the Agreement.  Thus, Plaintiff's allegations are a question of fact which should be determined by the Court sitting as a trier of fact and not by this Court ruling on

30

whether or not Plaintiff has stated a claim in its pleadings as a matter of law under Rule 12(b)(6).  *Elnashar*, 446 F.3d at 794. For the reasons set forth above, Defendants' Motion to Dismiss on this basis is DENIED.

### d.   Whether the Parties Can be Returned to Their Precise Pre-Agreement Positions is Not Dispositive and Does Not Preclude Plaintiff from Seeking Its Claim for Rescission and Thus Defendants' Motion to Dismiss on This Basis is Denied

Whether the parties can be returned to their exact pre-Agreement positions does not preclude Plaintiff from seeking its claim for rescission and thus Defendant's Motion to Dismiss on this basis is DENIED.

Defendants argue that rescission is improper in the instant case because the parties cannot be restored to their pre-Agreement positions.  As recited by Defendants, Defendants would have to return all payments it received from Plaintiff and Plaintiff would somehow have to return the services that Defendants provided to Plaintiff.

The Court agrees that rescission requires that the parties be placed in the same positions they occupied prior to the Agreement.  However, under both Arkansas and Pennsylvania law, absolute and literal restoration is not required, but only such restoration as is reasonably possible in accordance with

31

equitable principles.  *Fisher*, 816 S.W.2d at 869-70; *Keenheel*, 579 A.2d at 1361.

In the instant case, Defendants contend that Plaintiff's request for rescission should be dismissed as a matter of law because it would be a "patently absurd result" if Defendants were ordered to return all payments it received from Plaintiff and Plaintiff were ordered to return the services it was provided by Defendants.  The Court disagrees.

As established above, absolute and literal restoration is not required, only restoration that is reasonably possible in accordance with equitable principles is required.   In cases where property or services cannot be restored in specie, but where its value is capable of being ascertained, a party entitled to do so may rescind the contract by tendering the pecuniary equivalent of the property in question.  *See Fisher*, 816 S.W.2d at 869-70; *see also Erickson Supply & Const. Co., Inc.*, 1989 WL 105955, at *2.  If it is subsequently found by the trier of fact that Plaintiff is entitled to rescind the Agreement at issue, and although Plaintiff cannot restore in specie the services provided to it by Defendants, it may be determined that Plaintiff can tender the pecuniary equivalent of the services in question.

Whether the parties can be returned to their exact pre-Agreement positions does not preclude Plaintiff from seeking its

32

claim for rescission and thus Defendants' Motion to Dismiss on this basis is DENIED.

### C.  Plaintiff has Sufficiently Met the Pleading Requirements of Federal Rule of Civil Procedure 9(b)

To the extent Defendants' Motion to Dismiss contends Plaintiff's Count II should be dismissed as a matter of law because Plaintiff has failed to plead with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b), the Court finds that it is satisfied that the Amended Complaint adequately apprises Defendants of the time, place, and circumstances, of the activities that allegedly constitute fraud and misrepresentation and thus Defendants' Motion to Dismiss on this basis is DENIED.

The Court notes that Defendants allege that Plaintiff's claim for reformation based on unilateral mistake fails as a matter of law because Defendants claim that Plaintiff's allegations do not satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b).  However, as noted within Part I at Footnote 1 *supra*, the Court will not address Plaintiff's reformation claim because it was not properly filed as a separate motion and further did not properly contain a proposed version of Plaintiff's second Amended Complaint as required by the Court.

33

Curiously, no such argument is made by Defendants against any other claims of Plaintiff.  More specifically, Defendants do not allege that Plaintiff failed to satisfy the pleading requirements for its rescission claim.   Nonetheless, in connection with Plaintiff's allegations of misrepresentation contained in Count II, it might be construed that Defendants contend that Count II fails to state the circumstances constituting misrepresentation with sufficient particularity. Thus, the Court will address the issue as to Plaintiff's claim for rescission.

Generally, the complaint in an action for rescission of an instrument must state facts or a claim constituting a proper ground for application of these equitable remedies.  Rule 9(b) requires that:  "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).   Rule 9(b) is to be interpreted in harmony with the principles of notice pleading; thus, although a pleading alleging misrepresentation need not provide anything more than notice of the claim, it must contain a higher degree of notice, enabling a defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct.  *Schaller Telephone Co. v. Golden Sky Sys.,*

34

*Inc.*, 298 F.3d 736 (8th Cir. 2002).

Although conclusory allegations that Defendants' conduct was fraudulent and deceptive are insufficient to satisfy Rule 9(b), it is sufficient for Plaintiff to set forth the time, place and circumstances of the alleged fraudulent activities. *Farmers & Merchants Bank v. Hamilton Hotel Partners of Jacksonville Ltd. P'ship*, 702 F.Supp. 1417, 1422 (W.D.Ark. 1988). The obligation to plead circumstances constituting misrepresentation should not be treated as requiring allegation of facts in the pleading. *Id.* The test of pleading under Rule 9(b) is whether the pleading gives fair notice of the claims asserted and the basic transactions upon which the claims are based. *Id.* (citing generally Wright & Miller, Fed. Prac. & Proc. § 1300).

A review of Plaintiff's Amended Complaint reveals the following material factual allegations which, for purposes of this ruling, must be accepted as being true: (1) prior to entering into each and every additional Schedule to the Agreement, representatives of Defendants confirmed that the term of the Agreement was not changed or impacted in any way by the additional Schedules and that the term of the Agreement expired on April 1, 2003 (Amended Complaint, at ¶ 10) and (2) Defendants knew or had reason to know of Plaintiff's unilateral mistake (Amended Complaint, at ¶ 26). The Court believes the Amended

35

Complaint adequately apprises Defendants of the time, place, and circumstances, of the activities that allegedly constitute fraud and misrepresentation.

Therefore, to the extent Defendants' Motion to Dismiss contends Plaintiff's Count II should be dismissed as a matter of law because Plaintiff failed to plead with sufficient particularity to satisfy Rule 9(b), the Court is satisfied that the Amended Complaint adequately apprises Defendants of the time, place, and circumstances, of the activities that allegedly constitute fraud and misrepresentation and thus Defendants' Motion to Dismiss on this basis is DENIED.

### D.   Plaintiff Has No Right to Jury Trial for Its Remaining Claim for Rescission

Because the only remaining claim is Plaintiff's request for the equitable remedy of rescission, Defendants' motion to strike Plaintiff's demand for a jury trial is GRANTED and Plaintiff's demand for a jury trial is DENIED.

Federal Rule of Civil Procedure 39(a) provides (emphasis added):

> When trial by jury has been demanded as provided in [Federal Rule of Civil Procedure 38], the action shall be designated upon the docket as a jury action.  The trial of all issues so demanded shall be by jury, *unless* (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without

36

a jury or (2) **the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States.**

Claims of fraud and misrepresentation raise difficult questions pertaining to the right of a jury trial in federal courts because such claims are "'not distinctively either a legal issue or one of an equitable nature,' and the jury right turns on the remedy sought and the context in which the claim of fraud arises."  Charles Alan Wright and Arthur R. Miller, 9 Fed. Prac. & Proc. Civ.2d § 2311.

Nonetheless, if the claimant can only be made whole by some equitable remedy such as rescission and no legal damages are sought, as in the instant case, there is no right to a jury trial.  *See id.* (citing *Plechner v. Widener College, Inc.*, 569 F.2d 1250, 1258 (3d Cir. 1977) (striking jury demand on claim for rescission); *Mallory v. Citizens Utilities Co.*, 342 F.2d 796 (2d Cir. 1965) (an action to set aside a contract and deed on the ground that the contract was induced fraudulently was an equitable action for the rescission of a contract); *Black v. Boyd*, 248 F.2d 156 (6th Cir. 1957) (an action for the rescission of a contract and the imposition of a constructive trust was equitable and not triable by a jury); *Greenhood v. Orr & Sembower, Inc.*, 158 F.Supp. 906 (D.C.Mass. 1958) (where the primary relief requested by the plaintiff was a declaration that

37

a franchise granted to defendants was null and void, the action was determined to be one for cancellation or rescission of a contract, a proceeding traditionally equitable in nature, and the plaintiff was not entitled to a jury trial); *McDermott v. Travelers Ins. Co.*, 59 F.Supp. 269 (D.C.Pa. 1945) (defendant not entitled to jury trial on counterclaim for affirmative equitable relief by the setting aside of a contract under which plaintiffs were claiming and the setting aside of the revocation of a contract under which defendant was claiming)).

For the reasons set forth above, Defendants' motion to strike Plaintiff's demand for a jury trial is GRANTED and Plaintiff's demand for a jury trial is DENIED.

## IV.   CONCLUSION

For the reasons stated above, the Motion to Dismiss the Amended Complaint of Plaintiff or, in the Alternative, to Strike Jury Demand (Doc. 29) filed in this case on September 25, 2006, by Defendants, is GRANTED IN PART and DENIED IN PART, and Plaintiff's Amended Complaint (Doc. 22) filed in this case on September 6, 2006, is DISMISSED IN PART WITH PREJUDICE.

IT IS SO ORDERED THIS 15th day of December, 2006.

/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge

38